(No. 3892—

OSCAR PHELPS, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed January 9, 1946.*

R. GERALD TRAMPE, for claimant.

GEORGE F. BARRETT, Attorney General; C. ARTHUR NEBEL, Assistant Attorney General, for respondent.

Fisher, C. J.

This claim was filed December 8, 1944, and the record of the case completed on November 19, 1945. The claim is for benefits under the Workmen's Compensation Act because of injuries received by the claimant while engaged in his duties as an employee of respondent.

Claimant alleges that on the 23rd day of January, 1944 he was employed by respondent in the Department of Public Welfare as an attendant at the Dixon State Hospital, Dixon, Illinois; that his duties required him to supervise and care for dangerous feeble-minded and epileptic patients.

That, on January 23, 1944 while attending a patient, one James Martin, claimant was suddenly and viciously attacked by the said James Martin and other patients who beat the claimant about the head and body, knocking him to the floor, rendering him unconscious and inflicting numerous and serious injuries from which claimant has not recovered and which have left him permanently and totally disabled. Claimant seeks an award under the Workmen's Compensation Act for total permanent disability and a pension for life.

The record consists of the Complaint, Department Report, Transcript of Evidence, Abstracts of Evidence, and Waiver of Brief by both claimant and respondent.

At the time of the injury claimant was married and had no children under sixteen years of age dependent upon him for support.

Claim was filed in apt time. Claimant and respondent were operating under the provisions of the Workmen's Compensation Act, and claimant is entitled to the benefits of the said Act. The facts are not in dispute, and the only question to be determined here is the extent of the injuries sustained by the claimant.

From the evidence, it appears that Mr. Phelps was taken to the Illinois Research Hospital at Chicago, Illinois, for examination and treatment, but the result of this examination and treatment is not disclosed by the evidence except by the testimony of his daughter, Mrs. Maxine Hobbs, which testimony is entirely incompetent.

Dr. Stephen P. Ward, a physician and surgeon at Metropolis, Illinois, testified that he was the family physician of the claimant since 1934, and that prior to the injuries complained of claimant was a normally healthy man. Dr. Ward testified that on July 6, 1944 he examined the claimant and made a complete physical examination; that he found the claimant to be very emotional; that claimant did not respond promptly to questions, and would cry upon the slightest questioning; that he diagnosed the claimant as a very emotional man with symptoms of residual organized occipital clot from brain concussion, with symptoms of right cervic pressure injury. Dr. Ward further testified that it was his conclusion that the claimant was totally and permanently incapacitated.

Dr. Ward testified that he again examined the claimant on September 12, 1944 at his office in Metropolis, and that at this time he found no improvement.

On July 6, 1944 Dr. Ward made a written report of his examination of the claimant, which is, in part, as follows:

"This is to certify that I have examined Oscar Phelps of Golconda,

Illinois, and in my opinion I believe that he is totally and permanently disabled for the following reasons:

Persistent occiput headache, vertigo, nervousness and emotional instability.

I believe that he has residual organized blood clot in the right occipital area, pressure on the right cervical nerves, causing neuralgic symptoms over their distribution. This is probably due to injury by external violence which occurred January 23rd, 1944. I believe this man will make little or no improvement for at least six months, at which time he should be rechecked for confirmation of complete and total disability."

Dr. Ward again examined the claimant on September 8, 1944, and on September 12, 1944 reported as follows:

"This is to certify that on September 8th, 1944, I re-examined Oscar Phelps and found no improvement in his physical disability and believe him to be totally and permanently disabled.

This disability is due to external violence received January 23rd, 1944 and are persistent headache, vertigo, nervous and emotional instability, which I believe to be a residual blood clot in the right occipital area. There still remains a neuralgic symptom over the right cervical area, distribution of it without a doubt was caused by external violence causing fracturing pressure on the anterior roots. Briefly, this man is totally and permanently disabled from the result of his injury."

There is much testimony by Mr. Phelps, and by his wife, Ressa Phelps, all being to the effect that the claimant is totally disabled.

The record shows that claimant was paid $501.53 for unproductive time, which must be deducted from any award entered herein.

From all the evidence herein, we must conclude that the claimant is totally and permanently disabled as a result of the injuries sustained while engaged in his duties as an employee of respondent, and is, therefore, entitled to the benefits of the Workmen's Compensation Act. At the time of the injury claimant's salary was $110.00 per month, and employees engaged in similar capacities received a salary of $110.00 per month, or $1320.00 per

year. Claimant's compensation rate is $14.91 per week. Claimant is, therefore, entitled to an award under the Workmen's Compensation Act, Section 8 (b) and (1) in the sum of Forty-Seven Hundred Dollars ($4700.00), less overpayment of Five Hundred One and 53/100 Dollars ($501.53), or a total of Forty-one Hundred Ninety-eight and 47/100 Dollars ($4198.47); and thereafter, a pension for life under Section 8 (f) equal to 8 per centum of the amount due under Section 8 (b) and (1).

An award is therefore entered in favor of claimant, Oscar Phelps, in the sum of $4198.47, payable as follows:

$1535.73, which is accrued and payable forthwith;

$2662.71, payable in weekly installments of $14.91, beginning with the week of January 13, 1946; and thereafter a pension for life in the sum of $376.00 annually, payable in monthly installments of $31.33.

This award is subject to the approval of the Governor as provided in Section 3 of "an Act concerning the payment of compensation awards to State employees."